**SO ORDERED.**

**SIGNED this 14th day of January, 2015.**



Dale L. Somers
United States Bankruptcy Judge

___

For on-line but not print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | |
| **API M&I HOLDING, LLC,** | **CASE NO. 14-22451** |
| **DEBTOR.** | **CHAPTER 11** |

### MEMORANDUM OPINION AND JUDGMENT DENYING MOTIONS OF LSREF3 SAPPHIRE, LLC TO DISMISS AND FOR RELIEF FROM STAY

On January 7, 2015, an evidentiary hearing was held on LSREF3 Sapphire, LLC's Motion to Dismiss Chapter 11 Bankruptcy and Motion for Relief from the Automatic Stay. Debtor, API M&I Holding, LLC, appeared by Colin N. Gotham of Evans & Mullinix, P.A. LSREF3 Sapphire, LLC appeared by Bradley D. McCormack and Tracy J. Wrisinger of Sader Law Firm, LLC. The Court has jurisdiction.[1] Debtor's exhibits 1

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for

through 31 and LSREF3 Sapphire, LLC's exhibits A through Z, with the exception of exhibits R, S, and W, were admitted by stipulation. Testimony of Max Dobrushkin, on behalf of LSREF3 Sapphire, LLC, and Christina Abnos, on behalf of the Debtor, was heard. The Court took the matter under advisement, and is now ready to rule. For the reasons articulated below, the Court denies both motions.

**FINDINGS OF FACT.**

LSREF3 Sapphire, LLC's two motions rely upon identical facts, most of which are undisputed.

API M&I Holding, LLC ("Debtor") filed a voluntary petition under Chapter 11 on October 14, 2014. Debtor owns three parcels of real property, two located in Missouri and one located in Kansas. The Missouri properties are apartment buildings, valued by Debtor at $750,000 and $1,700,000 respectively, and the Kansas property is a shopping center, valued by Debtor at $2,100,000. LSREF3 Sapphire, LLC ("Creditor") holds a Note for approximately $2 million secured by the three properties.

The real properties and the Note went through various ownership transfers over the past decade. The Note was originated by Gold Bank on September 15, 2003 in the amount of $3,340,800. The original borrowers were Nicholas Abnos, Christina Abnos,

---

the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

and Abdiana Properties, Inc. Nicholas Abnos executed deeds of trust pledging the two Missouri properties to Gold Bank and Abdiana Properties, Inc. executed a mortgage of the Kansas property. M&I Marshall & Ilsley Bank acquired the Note by way of merger with Gold Bank.

In April 2011, as part of restructure of debt negotiated by the Abnoses with their lenders, including M&I Marshall & Isley Bank, the obligation under the Note was assumed by three Missouri limited liability companies, Abdiana M&I, LLC, Abdiana M&I No. II, LLC, and Abdiana M&I No. III, LLC. Each of the three limited liability companies became the owner of one of the real properties and pledged that property to secure the Note. Nicholas and Christina Abnos were removed as borrowers, but personally guaranteed the Note. As a term of the restructure, the three limited liability companies agreed that if they became the subject of a proceeding under the Bankruptcy Code the limited liability company "intended to be and will be a debtor that owns 'single asset real estate' (as defined in Section 101(51)(B) of the United States Bankruptcy Code." [2]

The maturity date of the Note was extended twice. The second modification extended the maturity date to June 11, 2014. At the maturity date, BMO Harris Bank, as successor by merger to M&I Marshall & Isley Bank, declined to renew the Note. On June 19, 2014, without notice to the borrowers, BMO Harris sold the Note to LSREF 3

---

[2] Exh. H, ¶ 9(g).

Sapphire, LLC (Creditor), whose business is to purchase and promptly liquidate notes, by any means available, including prompt payment in full, liquidation of collateral, and enforcement of guarantees.

On June 25, 2014, Creditor sent a letter to borrowers and the guarantors demanding immediate payment.  Limited negotiations were held, but no payments were made.  On September 26, 2014, Creditor sent notices of foreclosure proceedings to the two limited liability companies holding the Missouri properties, stating the properties would be sold through foreclosure sale on October 20, 2014. Creditor was also preparing a foreclosure action with respect to the Kansas property.

Christina Adnos consulted with her accountant and counsel.  On September 26, 2014, Christina Abnos, as Organizer, filed limited liability company articles of organization for API M&I Holding, LLC, the Debtor.  Kansas was chosen because of the favorable tax treatment afforded income of limited liability companies.  On October 8, 2014, Debtor filed its State of Kansas Certificate of Merger of Domestic Limited Liability Companies with the Kansas Secretary of State.  It recites that pursuant the K.S.A. 17-7681, the three Missouri limited liability companies owning the real property which secures the Note, Abdiana M&I, LLC, Abdiana M&I No. II, and Addiana M&I No. III, are merged with API M&I Holding, LLC (the Debtor), the newly formed Kansas limited liability company.  Debtor was the surviving entity.  This is referred to below as the Abdiana Merger.  On October 9, 2014, three quit claims deeds were filed, transferring any interest in the real properties held by the three Missouri limited liability companies to the

4

Debtor. On October 14, 2014, a certificate of merger was filed with the Missouri Secretary of State. The foregoing mergers and transfers were made without Creditor's knowledge or consent.

Christina Abdos testified that the purpose of the Abdiana Merger was to consolidate the ownership of the properties, which always had been operated as a unit, even though M&I Marshall & Isley had required that each property be owned by a separate limited liability company. There always was only one Note, one insurance policy, and one bank account into which the cash of each of the three entities was swept daily. The merger also was undertaken to save income taxes based upon current Kansas tax law and to reduce the costs and attorney fees in the anticipated bankruptcy proceeding.

Debtor filed for relief under Chapter 11 on October 14, 2014. According to Debtor's schedules, Creditor's claim is for approximately $2.045 million and is secured by real property worth $4.55 million. Creditor is the only secured creditor, there are no priority unsecured claims, and unsecured nonpriority claims are approximately $35,000. Debtor has timely paid adequate protection payments to Creditor and has filed a proposed plan of reorganization, which it said to provide for 100% payment to creditors.

5

**DISCUSSION.**

    **A. INTRODUCTION.**

Creditor's two motions are based upon identical factual allegations and similar legal theories. Both motions are predicated primarily on Creditor's argument that the merger of three Missouri limited liability companies, each of which owned one of three real properties securing Creditor's claim, into the Debtor, a Kansas LLC, was invalid and part of a bad faith scheme.

    **B. MOTION TO DISMISS.**

    **1. The Parties' Contentions.**

Creditor contends the case should be dismissed for cause under 11 U.S.C. §1112(b)(1). It alleges that because the Abdiana Merger was invalid, Debtor lacks ability to prosecute this bankruptcy case, thereby providing grounds to dismiss the case for cause. Further, Creditor alleges that Debtor's conduct after the merger evidences bad faith and that the case should be dismissed based upon the totality of the Debtor's actions. Debtor opposes the motion, contending that the merger complied with Kansas law, that its actions do not evidence bad faith, that case law supports denial of the motion, and that Debtor is operating with the intent to satisfy its creditors.[3]

---

[3] Doc. 43, pp. 5-12.

### 2. The Court Finds the Merger Was Valid and Therefore the Case Should Not Be Dismissed Because Debtor Lacks the Ability to Prosecute the Case.[4]

The Court finds that the Abdiana Merger was not invalid. The Certificate of Merger filed in Kansas states that the merger was pursuant to K.S.A. 17-7681. That statute provides in part:

> (a) Pursuant to an agreement of merger or consolidation, one or more domestic limited liability companies may merge or consolidate with or into one or more limited liability companies formed under the laws of the state of Kansas or any other state or any foreign country or other foreign jurisdiction, or any combination thereof, with such limited liability company as the agreement shall provide being the surviving or resulting limited liability company.

Creditor's argument that the merger did not comply with the foregoing Kansas statute is the following:

> "Domestic limited liability company" is defined in K.S.A. § 17-7663(f) as "a limited liability company formed under the laws of the state of Kansas and having one or more members." Therefore for the Debtor to utilize the merger doctrine of K.S.A. § 17-7681, the merger had to occur between one or more domestic, i.e. Kansas, limited liability companies. That did not occur in the instant case. The Abdiana companies were all Missouri limited liability companies. The only Kansas limited liability company in the Abdiana Merger was the Debtor, formed 11 days before the Certificate of Merger was filed with the Kansas Secretary of State's Office. Because of the lack of domestic LLC's, it was

---

[4] This section (B)(2) of this memorandum addressing the validity of the Abdiana Merger is incorporated by reference into the oral ruling announced on the record on January 8, 2015, in adversary proceeding in this case, *API M&I Holding, Inc. v. LSREF3 Sapphire, LLC*, adversary no. 14-6089.

impossible for the three existing companies to merge into a
Kansas LLC pursuant to K.S.A. § 17-7681.[5]

Creditor cites no case law or additional statutes which support its position.

Debtor responds:

> K.S.A. § 17-7681(a) provides that a domestic limited liability
> company may "merge or consolidate with or into one or more
> limited liability companies formed under the laws of the
> state of Kansas *or any other state*[.]" (emphasis added). The
> statute expressly authorizes the merger in the present case
> between one Kansas and three Missouri limited liability
> companies. Debtor was a duly formed domestic limited
> liability company authorized to merge with limited liability
> companies formed under Missouri law. Therefore, the
> Abdiana Merger complied with all aspects of K.S.A. §
> 17-7681 and the Abdiana entities were successfully merged
> into Debtor.[6]

The Court finds that Debtor's argument is correct. A plain reading of the statute, with the elimination of the provisions not applicable to this case, is the following:

> Pursuant to an agreement of merger or consolidation, one or
> more domestic limited liability companies may merge or
> consolidate with . . . one or more limited liability companies
> formed under the laws of . . . any other state . . . with such
> limited liability company as the agreement shall provide being
> the surviving or resulting limited liability company.

There is no statutory requirement in K.S.A. 17-7681(a) that all of the limited liability companies involved be Kansas entities; rather the statute requires that only one of the entities involved be a domestic (Kansas) company.

---

[5] Doc. 29, p. 10 (motion to dismiss); doc. 32, p. 9 (motion for relief).

[6] Doc. 43, p. 6; doc. 42, p. 6.

8

This construction of K.S.A. 17-7681(a) was expressly recognized by the Kansas legislature when, in 2009, it adopted the Business Entity Transactions Act, K.S.A 17-78-201 through 17-78-206. That Act provides for conversions and mergers among different forms of business entities, such as a merger of a corporation and a partnership and a merger of a corporation and a limited liability company. The Act expressly excepts from the new statutory scheme mergers under K.S.A. 17-7681 and describes mergers under that statute as involving both domestic and foreign limited liability companies. It does so by providing in K.S.A. 17-78-201(c) that the Act does not apply to "a merger between any two or more domestic limited liability companies or one or more domestic liability companies and one or more foreign limited liability companies pursuant to K.S.A. 17-7681, and amendments thereto."[7] A commentator observed that the exception of mergers between domestic and foreign limited liability companies from the new act was because the organic laws governing limited liability companies already provide for such mergers.[8]

The Court therefore concludes that the merger of the three Abdiana Missouri limited liability companies into Debtor, a Kansas limited liability company, was valid. Creditor's argument that this case must be dismissed because Debtor lacks ability to prosecute this bankruptcy case, thereby providing grounds to dismiss the case for cause, is rejected.

---

[7] K.S.A. 17-78-201(c)(3).

[8] Edwin W. Hecker, Jr., The Kansas Business Entity Transactions Act, 80 J. Kan. B. Ass'n. 20, 23 (2011).

9

### C. The Court Rejects Creditor's Alternative Argument that the Case Should be Dismissed Because it was Filed in Bad Faith.

Creditor's alternative arguments are that Debtor's conduct after the merger evidences bad faith and the case should be dismissed based as a bad faith filing evidenced upon the totality of the Debtor's actions.

Section 1112(b) addresses dismissal of a Chapter 11 case for cause. Subsection (b)(4) provides a nonexclusive list of circumstances constituting cause, such as gross mismanagement of the estate and failure to comply with an order of the court. "In addition to granting relief for one of the reasons enumerated in section 1112(b), the court may also dismiss a chapter 11 case for lack of good faith."[9] "It is well established under the Bankruptcy Code, as it was under the Bankruptcy Act, that a Chapter 11 Petition must be filed in good faith, and if not, dismissal of the case is an appropriate remedy."[10] When considering dismissal for lack of good faith, the matter "[a]t issue is whether the bankruptcy filing contravened the purposes of the Bankruptcy Code under its good faith requirements."[11] "The protection of the automatic stay is not *per se* a valid justification

---

[9] 7 *Collier on Bankruptcy* ¶1112.07, 1112-48 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2014).

[10] *Pacific Rim Inv., LLP v. Oriam (In re Pacific Rim Inv., LLP)*, 243 B.R. 768, 771 (D. Colo. 2000) (*citing Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1416 (10th Cir. 1996) (affirming sanctions for bad faith filing of Chapter 11 case)).

[11] *Solow v. PPI Ente. (U.S.), Inc. (In re PPI Enter. (U.S.), Inc.)*, 324 F.3d 197, 210 (3rd Cir. 2003).

for a Chapter 11 filing; rather, it is a consequential benefit of an otherwise good faith filing."[12]

A good faith determination requires consideration of the totality of the circumstances and must be based upon a "fact-intensive, case-by-case inquiry."[13] When a Chapter 11 Debtor's good faith is challenged by a motion to dismiss, the moving party must make a prima facie showing of the Debtor's lack of good faith. The burden then shifts to the Debtor to show good faith.[14]

The actions which Creditor alleges evidence bad faith are: Creation of the Kansas limited liability company on the date that notice of foreclosure was received; creation of a new limited liability company in Kansas, even though the existing limited liability companies were organized in Missouri; transfer of the real property securing Creditor's claim by quit claim deeds with no consideration and no notice to Creditor; avoiding the single assets real estate requirement by creating a new limited liability company that owns three parcels of real property; and filing for Chapter 11 relief in order to stop the foreclosures.[15] According to Creditor, "[t]he end result of Debtor's scheme was to take

---

[12] *NMSBPCSLDHB, L.P. v. Integrated Telecon Express, Inc. (In re Integrated Telecom Express., Inc.)*, 384 F.3d 108, 128 (3d Cir. 2004) (quoting *In re HBA East, Inc.*, 87 B.R. 248, 262 (Bankr. E.D. N.Y. 1988)).

[13] *In re PPI Enter. (U.S.), Inc.*, 324 F.3d at 210.

[14] *In re Muskogee Envt'l Conservation Co.*, 236 B.R. 57, 59 (Bankr. N.D. Okl. 1999); *In re Fox*, 232 B.R. 229, 233 (Bankr. D. Kan. 1999).

[15] Doc. 29, p. 11.

11

three unrelated properties owned by separate companies and file a single Chapter 11 Bankruptcy in a preferred forum to prevent foreclosure."[16]

Debtor responds that its actions were taken for valid business reasons and do not evidence bad faith. The purpose of the Abdiana Merger, which the Court has found to have been in accord with Kansas law, was to restructure the ownership and operation of the three parcels of real estate into a single company. This legal structure had been in place prior to April 2011, when creditors required a separate limited liability company for each property. Despite this legal structure, the companies continued to be operated as a single unit. The restructure allowed the legal structure to be in conformity with the businesses' operations. The restructure also reduced the anticipated costs of bankruptcy. Kansas, the state where Debtor's most valuable asset is located, was chosen as the state of creation of the new company to take advantage of the recently enacted Kansas income taxation exemption for pass through income. Further, the ownership of the three properties was not changed in substance. Debtor is solely owned by Abdiana, Inc., and Abdiana, Inc. was also the sole owner of the three Missouri limited liability companies merged into Debtor. Debtor does not dispute its liability for the debts of its predecessors.

The Court finds that the actions identified by Creditor do not evidence bad faith. Valid business purposes supported the Abdiana Merger. The filing of a single Chapter

---

[16] *Id.*

11 case, rather than three related cases, has benefitted all creditors because it resulted in the saving of bankruptcy related costs, including filing fees, attorney fees, and monthly trustee fees. As a result of the merger, only one monthly report must be prepared. The new limited liability company was created under Kansas law rather than Missouri law to take advantage of the recently enacted Kansas income tax exemption. The real property owned by each of the three Missouri limited liability companies was transferred to the Debtor as a result of the Abdiana Merger, under which the Kansas limited liability became the successor to all of the liabilities and assets of the Missouri companies. The filing of the quit claim deeds properly reflected this transfer in the real estate records. As to the contention that bad faith is evidenced by Debtor's avoidance of the single asset real estate requirements, Debtor argued at the hearing that it has complied with these requirements, even though the Code did not obligate it to do so. Creditor did not refute this position. Filing of the bankruptcy gives Debtor an opportunity to restructure the Note.

For the foregoing reasons, the Court finds that this bankruptcy case should not be dismissed because it was not filed in good faith.

**D. CREDITOR'S MOTION FOR RELIEF FROM STAY.**

**1. The Parties' Positions.**

Creditor moves for relief from stay based upon the same facts and for the essentially the same reasons as it moved to dismiss. It argues that the alleged invalidity of the Abdiana Merger constitutes "cause" for stay relief under §362(d)(1) and that

Case 14-22451    Doc# 74    Filed 01/14/15    Page 13 of 17

Debtor's actions were allegedly part of a bad faith scheme to delay, hinder, or defraud creditors, providing grounds for stay relief under §362(d)(4). Creditor opposes the motion, contending that the Abdiana Merger was valid and its actions do not evidence bad faith.

### 2. The Court Finds the Abdiana Merger was Valid and Does not Provide a Reason to Grant Relief From Stay.

Section 362(d)(1) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, . . .
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; . . .

The "[u]se of the word 'cause' suggests an intention that the bases for relief from stay should be broader than merely lack of adequate protection. Thus, relief might be granted when the court finds that the debtor commenced the case in bad faith."[17] "It has been held that there is no substantive difference between the cause requirement for dismissal of a petition under Section 1112(b) and the cause requirement for relief from an automatic stay under Section 362(d)(1)."[18]

As discussed above, the Court finds that the Abdiana Merger complied with Kansas law and that Debtor did not act in bad faith for purposes of §1112(b). The

---

[17] 3 *Collier on Bankruptcy* ¶ 362.07[3][a], 362-107.

[18] *Id*. at ¶362.07[7][b], 362-125.

Court therefore denies Creditor's motion to grant relief from stay for cause under §362(d)(1).

### 3. The Transfer of Real Property to Debtor was not Part of a Scheme to Delay, Hinder, or Defraud Creditors Within the Meaning of § 362(d)(4)(A).

Creditor contends it is entitled to relief from stay under §362(d)(4), which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, . . .
>
> > (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either –
> > > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or . . .

Subsection (d)(4) provides a "particularized basis for stay relief for creditors holding a claim or interest in the debtor's real property. The 'good faith' test is now a specific basis for stay relief with respect to real property."[19] The following explicit findings are required for relief under this subsection: "(i) the bankruptcy case is part of a scheme, (ii) the object of the scheme was to hinder, delay or defraud creditors, (iii) the scheme involved either (a) a transfer of some interest in real property without the secured

---

[19] 2 William L. Norton, Jr., and William L. Norton III, *Norton Bankruptcy Law & Practice 3d*, § 43:49 at 43-109 (Thomson Reuters 2014).

15

Case 14-22451    Doc# 74    Filed 01/14/15    Page 15 of 17

creditor's consent or (b) multiple bankruptcy filings affecting the property."[20] The subsection "addresses conduct that could be indicative of an abusive filing in relation to real property foreclosure."[21]

The Court finds that this bankruptcy case is not part of scheme to hinder, delay, or defraud creditors. As found above with respect to Creditor's motion to dismiss the case because it was allegedly filed in bad faith, the actions of Debtor were taken in good faith for valid business reasons.

**CONCLUSION.**

Creditor's motion to dismiss under §1112 and for relief from stay under § 362 are denied for the reasons discussed above.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**JUDGMENT**.

Judgment is hereby entered denying Creditor's Motion to Dismiss Chapter 11 Bankruptcy[22] and Creditor's Motion for Relief from the Automatic Stay.[23] The

---

[20] *Id.*

[21] 3 *Collier on Bankruptcy* ¶ 362.05[19][a], 362-84.

[22] Doc. 29.

[23] Doc. 32.

judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

###